# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EARL C. DAVIS,

       Plaintiff,

    v.

GEORGE HYMAN CONSTRUCTION
COMPANY, et al.,

       Defendants.

Civil Action No. 79-2561
RJL/DAR

## MEMORANDUM OPINION

This action is currently before the undersigned on remand from the United States Court of

Appeals for the District of Columbia Circuit for the purpose of further proceedings with respect to

whether or not the Defendants, Liberty Mutual Insurance Company and George Hyman

Construction Company (collectively, "Liberty Mutual"), complied, as to three reimbursement

requests, with the provisions of this Court's August 24, 1982 Order, as modified by the

undersigned's March 15, 2001 Order.[1]  In its May 2, 2014 Judgment, the Circuit ordered that "on

remand the district court is instructed to determine whether Liberty Mutual's responses to the

requests dated March 14, April 3, and November 26, 2001, complied with the 2001 order, and if

any of them did not, to impose the fine prescribed by that order."  Judgment, *Davis v. Department

of Labor, et al.*, No. 13-5026 (D.C. Cir. May 2, 2014) (ECF No. 213).  On February 9, 2015, the

assigned United States District Judge referred this action to the undersigned "for the purpose of

---

[1] As the United States District Judge now assigned to this action reviewed the findings previously made by the undersigned pursuant to Local Civil Rule 72.2(b), *see* Memorandum Opinion (ECF No. 204) at 6, the undersigned understands the re-referral of this action to have been made pursuant to Local Civil Rule 72.2(a); thus, the undersigned, in the instant Memorandum Opinion and accompanying Order, "determine[s]" the issues identified by the Circuit.

making written findings, consistent with the Court of Appeals May 2, 2014 remand order in this case[.]" 02/09/2015 Minute Order.

**BACKGROUND**

In 1965, Plaintiff Earl C. Davis was injured on the job while employed as a carpenter by George Hyman Construction. Director's Response to Magistrate Robinson's July 1, 2005 Order (ECF No. 117) at 1–2. In 1982, Mr. Davis was found to be permanently disabled, and entitled to benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, as extended by the District of Columbia Workmen's Compensation Act. *Id.* Such a finding entitled Mr. Davis to compensation for covered medical expenses.

According to the Department of Labor, Mr. Davis,

> [f]acing difficulties obtaining medical treatment, . . . sought enforcement of the compensation order in this Court under 33 U.S.C. §§ 918(a) and 921(d) against Liberty Mutual . . . his employer's insurance carrier. In an Order dated August 24, 1982 ("1982 Order"), this Court set forth the rights and obligations of Mr. Davis and Liberty Mutual with respect to medical expenses.
>
> . . .
>
> The 1982 Order was modified in a March 15, 2001 order [("2001 Order")] to provide that Liberty Mutual's violation of the 1982 Order would subject it to a penalty. Specifically, "[f]or every day beyond the 30 days . . . that Liberty Mutual fails to pay in full or file an adequate response to a request for reimbursement or payment, Liberty Mutual will be liable for a $500 fine, payable to the Plaintiff, Earl C. Davis, until payment in full or an adequate response is made."[2]

---

[2] The Department of Labor continues to discharge its statutory obligation to adjudicate the merits of Mr. Davis's claims, as well as attempt to resolve any disputes between the parties, although it is no longer a party to this action. The Department of Labor's interpretation of the import of this Court's orders, in the context of its obligations and those of Liberty Mutual, included the following:

> The fact that nothing is due to be reimbursed to Mr. Davis [as a consequence of an ALJ determination that an expense is not covered] does not resolve the issue [of] whether Liberty Mutual violated the 1982 Order and [2001] Order by failing to respond appropriately within 30 days of Mr. Davis' request for reimbursement, and if so, the number of days the violation continued. Likewise, even as to certain medical bills that Liberty Mutual paid, it may have nevertheless violated the terms of the [2001] Order. It is possible that Liberty Mutual paid

*Id.* at 2–3.

Mr. Davis has consistently claimed that Liberty Mutual has failed to comply with the provisions of the 2001 Order, and has sought the imposition of the required fine.[3] In November 2003, the undersigned held a hearing and identified the four distinct reimbursement requests submitted by Mr. Davis then at issue: March 14, 2001, April 3, 2001, November 26, 2001, and March 7, 2002. *See* Appeal of Magistrate Judge Order Docket No. 180 to the Federal District Judge (ECF No. 185) at 8.

Mr. Davis pursued these four claims through the administrative process of the LHWCA, and a hearing was held before an Administrative Law Judge ("ALJ"), who partially approved and partially denied Mr. Davis's requests. *See* Exhibit C, Decision and Order (ECF No. 117-1) at 20–21. Mr. Davis appealed the ALJ's decision to the United States Department of Labor's Benefits Review Board ("BRB"), which affirmed the ALJ's decision. *See* Exhibit 1, Decision and Order (ECF No. 118-1) at 10.[4] Mr. Davis subsequently appealed the BRB's decision to the United States

---

but did so outside the time limits set forth in the orders and for these items, if Liberty Mutual did not provide Mr. Davis a written response within 30 days of presentation, the orders were violated.

Director's Response to Magistrate Robinson's July 1, 2005 Order (ECF No. 117) at 6.

[3] *See, e.g.*, Motion (ECF No. 57); Motion (ECF No. 77); Motion (ECF No. 103); Response to May 5, 2006 Order to Confer in Person Regarding the Status of Liberty Mutual's Payment of Claims (ECF No. 123); Motion for Default Judgement After Meet and Confer (ECF No. 131); Motion to Compel Compliance and Request for a Hearing (ECF No. 142); Motion for Order Entered as a Matter of Law (ECF No. 154); Motion for Enforcement of the United States Department of Labor Benefits Review Board Decision and Order (BRB No. 03-0210) Pursuant to 33 U.S.C. § 921(d) (ECF No. 170); Opening Statement for Hearing on April 10th, 2015 (ECF No. 224).

[4] Notably, both the ALJ and the BRB refused to consider the issue presently before the undersigned, *i.e.*, whether Liberty Mutual's responses to Mr. Davis's reimbursement requests were made in compliance with the terms of the 2001 Order. The ALJ "defer[red]" to this court "the determination [of] whether Liberty Mutual's December 21, 2001 and February 27, 2002 responses, and the manner, method, and timing of its payments relating to Mr. Davis's reimbursement requests comply with the District Court's various orders." Exhibit C, Decision and Order (ECF No. 117-1) at 19 n.13. The BRB likewise refrained from considering the issue of Liberty Mutual's compliance. *See* Exhibit 1, Decision and Order (ECF No. 118-1) at 3 n.4 ("We will not consider … whether Liberty Mutual's responses to claimant's requests for medical benefits are in compliance with the procedures set forth in the District Court's Orders for the processing of claimant's medical claims. The administrative law judge observed, in this regard, that his adjudication was limited to the substantive issues regarding claimant's entitlement to Section 7 medical benefits."). *See also supra*, note 2.

Court of Appeals for the District of Columbia Circuit, affirmed the judgment of the BRB.  *See*

*Davis v. Dir., Office of Workers' Comp. Programs*, 124 Fed. Appx. 1 (D.C. Cir. 2005).[5]

During the pendency of these administrative proceedings, Mr. Davis also sought review by

this Court of Liberty Mutual's responses to his four reimbursement requests, and imposition of the

fine specified by the 2001 Order, due to Liberty Mutual's failure to provide a timely response.  In

January 2007, the undersigned found that Liberty Mutual had violated the 2001 Order with regard

to its response to Mr. Davis's March 7, 2002 reimbursement request; the first of the four then at

issue.  *See* 01/10/2007 Minute Entry.  The undersigned imposed a fine of $5,500 based upon the

finding that Liberty Mutual responded eleven days later than required under the 2001 Order.  *Id.*

The then-assigned District Judge (Kennedy, J.) upheld the imposition of the fine.  *See* Order (ECF

No. 168).[6]

Now under consideration by the undersigned are the remaining three reimbursement

requests, submitted by Mr. Davis on March 14, April 3, and November 26, 2001.  Following the

Judgment of the Circuit, the undersigned, for the reasons set forth in detail on the record, scheduled

an evidentiary hearing.  *See* 03/11/2015 Minute Entry.  Upon consideration of the proffers and

arguments of the parties concerning the scheduling of an evidentiary hearing and the manner in

which such a hearing would be conducted, the undersigned determined that (1) the issues which

the Circuit directed the District Court to determine on remand could be determined only through

an evidentiary hearing, and (2) at such hearing, Defendants would bear the burden of production.

---

[5] As with the decisions of the ALJ and the BRB, the Circuit did not consider any argument regarding Liberty Mutual's compliance with the 2001 Order.  *See Davis v. Dir., Office of Workers' Comp. Programs*, 124 Fed. Appx. 1, 3 (D.C. Cir. 2005).

[6] As the Circuit, in its Judgment, noted, the order and accompanying fine imposed in January, 2007 "only resolv[ed] the question of the March 2002 request"; therefore that request and the corresponding responses by Liberty Mutual are no longer before the court.  *See* Judgment, *Davis v. Department of Labor, et al.*, No. 13-5026, (D.C. Cir. May 2, 2014) (ECF No. 213) at 1.

These procedures were the subject of continuing objections by both sides: Mr. Davis objected to the scheduling of an evidentiary hearing at all—insisting that the record already developed provided an ample basis for the undersigned's determination on remand—while Liberty Mutual objected to being ordered to "go first." *See, e.g.*, Plaintiff's Opening Statement for Hearing on April 10th, 2015 (ECF No. 224) at 14 ("Res judicata will not permit a rehearing of the same, four reimbursement request[s] at issue[.]"); Transcript of Evidentiary Hearing (ECF No. 271) at 10 ("Can I also brief that, Your Honor, on the burden of proof, which party it should rest with?"). On multiple occasions throughout the hearing, the undersigned stated the basis for this exercise of discretion. *See, e.g.*, Transcript of Status Conference (ECF No. 222) at 17 ("Because of the nature of the remand, the Court believes that it is appropriate to place upon the Defendants, the burden of both production and persuasion.").[7]

On April 10, 2015, the undersigned began the evidentiary hearing and heard testimony, on that date, from a witness called by Liberty Mutual with regard to the March 14, 2001 and April 3, 2001 reimbursement requests and corresponding responses. *See* Transcript of Evidentiary Hearing (ECF No. 271). Unfortunately, the witness was unable to testify regarding the November 26, 2001 reimbursement request before the undersigned recessed for the day. *Id.* Because the witness had not completed his testimony, the undersigned, as is customary, ordered, from the bench, that no party communicate with the witness until he was able to complete his testimony. *Id.* at 187.

Liberty Mutual challenged the undersigned's order that no party communicate with the witness pending the completion of his testimony regarding the final request. *See* Defendants'

---

[7] The undersigned incorporates herein all such findings. The undersigned now finds, in addition, that no party was prejudiced by the procedures which were implemented: Liberty Mutual was afforded a full opportunity to present all relevant, admissible evidence—testimony and exhibits—which it chose to offer, and Mr. Davis had a full opportunity to (1) cross examine the witnesses called by Liberty Mutual; (2) object to questions propounded by counsel for Liberty Mutual during Liberty Mutual's direct examination of its witnesses, and to Liberty Mutual's efforts to move exhibits into evidence; and (3) offer evidence on his own behalf. All parties were afforded abundant opportunity to present their closing arguments, both orally and in writing. *See* ECF Nos. 284, 286, 287, 288, 289, 290, 291.

George Hyman Construction/Liberty Mutual's Motion to Allow Communications Between Attorney & Client (ECF No. 234). Liberty Mutual then sought to stay the proceedings in order to further challenge the prohibition on communicating with the witness. *See* Defendant Liberty Mutual Insurance Company's and Defendant George Hyman Construction Company's Expidited [sic] Motion to Stay Proceedings Pending Resolution of Their Objection to Magistrate Judge Robinson's Order Prohibiting Their Attorney From Communicating with Liberity [sic] Mutual's Representative (ECF No. 239). Next, Mr. Davis moved to reconsider the decision by the undersigned to hold an evidentiary hearing. *See* Appeal [sic] of the Rehearing of Evidence Before the Magistrate Judge (ECF No. 246). The Court (Leon, J.) denied Mr. Davis's motion for reconsideration, *see* 01/29/2016 Minute Order.

Liberty Mutual sought review by the Circuit and filed a petition for a Writ of Mandamus to overturn the order that no party speak to the witness before he had completed his testimony. *See* Exhibit A, Petition for Writ of Mandamus of George Hyman Construction Company and Liberty Mutual Insurance Company (ECF No. 259-1). Mr. Davis also appealed to the Circuit, *see* Notice of Appeal (ECF No. 262). All parties having sought appellate review; the undersigned stayed the evidentiary hearing. 02/19/2016 Minute Order.

Both applications for relief in the Circuit were rejected. *See* Order, *In re: George Hyman Construction Company and Liberty Mutual Insurance Company*, No. 16-7006 (D.C. Cir. April 4, 2016); Order, *Davis v. George Hyman Construction Company and Liberty Mutual Insurance Company*, No. 16-7020 (D.C. Cir. June 16, 2016) (ECF No. 264). Thereafter, the undersigned scheduled the resumption of the evidentiary hearing to complete the testimony of the witness with regard to the November 26, 2001 reimbursement request. *See* 12/19/2016 Minute Entry. The evidentiary hearing resumed on January 26, 2017, and the witness who began his testimony on

April 10, 2015 completed his testimony. *See* 01/26/2017 Minute Entry. The undersigned scheduled a third day of the evidentiary hearing in order for Liberty Mutual to call a second witness to testify further regarding compliance with Paragraph 5 of the 2001 Order. *See* 01/27/2017 Minute Order.[8]

On February 15, 2017, the undersigned completed the evidentiary portion of the proceedings and scheduled a final session of oral arguments on the issue of whether or not Liberty Mutual's responses to the three requests at issue complied with the 2001 Order. *See* 02/15/2017 Minute Order and Entry. Oral argument was held on April 5 and April 10, 2017, after which the parties filed additional post-hearing memoranda to address factual issues, *see* Defendants' Memorandum Regarding Payments Made in Response to Plaintiff's Reimbursement Requests ("Factual Defenses Mem.") (ECF No. 284); Motion to Find Liberty Mutual in Contempt of Court and a Response to District Court Order April 11, 2017 to File Any Responds [sic] to Defendants' Memorandum Regarding the Dates and Amount of Payments ("Plaintiff's Factual Resp.") (ECF No. 288), as well as any legal or equitable defenses that may be appropriate, *see* Defendants George Hyman Construction and Liberty Mutual's Memorandum of Law Regarding Legal and Equitable Issues ("Legal and Equitable Defenses Mem.") (ECF No. 286). Mr. Davis subsequently responded to Liberty Mutual's claimed legal and equitable defenses. *See* Response to and Motion to Strike Defendants George Hyman Construction Company and Liberty Mutual's Memorandum of Law Regarding the Legal and Equitable Issues ("Plaintiff's Legal and Equitable Resp.") (ECF No. 289).

---

[8] Following the witness's testimony regarding Paragraph 5 of the 2001 Order, the parties agreed that Liberty Mutual fully complied with this provision, and therefore the undersigned will make no further findings regarding Paragraph 5, which required Liberty Mutual to serve all responses on "the District Director, District 40, Office of Workers' Compensation Programs, United States Department of Labor." *See* Transcript of Evidentiary Hearing (ECF No. 276) at 115 ("So our record will reflect that the parties agree that there is no need to address Provision 5, given the testimony of Mr. Jackson."); 2001 Order at 2.

Upon consideration of the evidence adduced at the evidentiary hearing, the arguments offered by the parties, both orally and in writing, and for the reasons discussed in detail below, the undersigned finds, as to one item included in Mr. Davis's April 3, 2001 reimbursement request and two items included in the November 26, 2001 reimbursement request, that Liberty Mutual failed to fully comply with the 2001 Order. The undersigned applied the formula for calculation of the fine provided by said Order, and determined that the fine totals $28,000.00. Thus, as directed by the Circuit, the undersigned imposes such fine.[9]

In so ruling, the undersigned has considered each of the equitable defenses offered by Liberty Mutual, and finds that Liberty Mutual's reliance upon such equitable defenses—both individually and collectively—is entirely misplaced. The undersigned undertakes a detailed discussion of these equitable defenses beginning in Section IV, *infra*. The undersigned finds, however, that it is appropriate to note at this juncture that the overarching proposition asserted by Liberty Mutual, *i.e.*, that the District Court lacks authority to impose any fine, is entirely specious, as the United States Court of Appeals for the District of Columbia Circuit remanded this action to the District Court for the express purpose of imposing the fine prescribed by the 2001 Order, upon a showing that Liberty Mutual failed to comply with the 1982 Order, as modified by the 2001 Order; indeed, the Circuit's instruction to the District Court was mandatory. *See* Judgment at 2 ("Accordingly, on remand the district court is instructed to determine whether Liberty Mutual's responses to the [three enumerated requests] complied with the 2001 order, *and if any of them did not, to impose the fine prescribed by that order*.") (emphasis supplied). The parties to this action—

---

[9] To the extent these findings are inconsistent with those made by the Court in 2012, prior to the most recent Judgment of the Circuit, *see* Memorandum Opinion (ECF No. 204), the 2012 findings are superseded by the instant ones.

in like manner as the undersigned—must assume that the Circuit did not direct the District Court

to undertake an unlawful action.[10]

## DISCUSSION

Liberty Mutual, having the burden of proof to show that its responses to Mr. Davis's

reimbursement requests complied with the 2001 Order, offered evidence, in the form of testimony

and exhibits, through Christopher Kijovsky, a technical claims specialist employed by Liberty

Mutual.  *See* Transcript of Evidentiary Hearing (ECF No. 271) at 21.  In addition, Liberty Mutual

elicited testimony from Norman Jackson, a claims examiner and the custodian of records employed

by the District of Columbia Department of Employment Services.  *See* Transcript of Evidentiary

Hearing (ECF No. 276) at 18.

In order to comply with Paragraph 4(A) of the March 15, 2001 Order, any response to a

reimbursement request by Liberty Mutual *approving* payment must:

> separately list[] each medication, therapy, procedure, or medical condition,
> as each is described in the request for reimbursement submitted by Mr. Davis,
> followed by the amount requested by Mr. Davis, and followed by the amount
> reimbursed, or to be reimbursed, by Liberty Mutual.  If two or more of the
> same medications, therapies, procedures, or medical conditions are included
> in the same request for reimbursement, Liberty Mutual will identify each by
> date, or other distinguishing feature, and separately respond to each.

March 15, 2001 Order (ECF No. 50) at 1.

To comply with Paragraph 4(B) of the March 15, 2001 Order, any response to a

reimbursement request by Liberty Mutual *denying* payment must:

> separately list[] each medication, therapy, procedure, or medical condition,
> as each is described in the request for reimbursement submitted by Mr. Davis,
> followed by the amount requested, followed by an unequivocal assertion that

---

[10] In the memorandum, Liberty Mutual addresses subject matter jurisdiction in passing.  Defendants George Hyman Construction and Liberty Mutual's Memorandum of Law Regarding Legal and Equitable Issues (ECF No. 286) at 2. On June 9, 2017, Liberty Mutual moved to dismiss on that ground.  *See* Defendants' Motion to Dismiss for Lack of Jurisdiction and Supporting Memorandum of Law (ECF No. 292).  As said motion is not ripe, however, no consideration of it is undertaken herein.

the payment is refused, followed by the reason payment is refused supported by an assertion of a specific and legally sufficient basis for nonliability. If two or more of the same medications, therapies, procedures, or medical conditions are included in the same request for reimbursement, Liberty Mutual will identify each by date, or other distinguishing feature, and separately respond to each.

*Id.* at 1–2.

To insure clarity, the undersigned sets forth findings regarding Liberty Mutual's compliance—and the assessment of any fine for noncompliance—for each reimbursement or payment request separately.

## I.     *March 14, 2001 Request*

On March 14, 2001, Mr. Davis mailed a letter to Liberty Mutual in which he included five requests: (1) reimbursement for prescriptions from CVS pharmacy, (2) reimbursement for the purchase of glucosamine and chondroitin, (3) the cost of replacement of an exercise bike, (4) the cost of replacement of a treadmill and (5) the cost of replacement of an additional piece of fitness equipment. Defs.' Exhibit A (ECF No. 223-1) at 2.

Mr. Kijovsky testified that Liberty Mutual provided a response to this request on March 26, 2001 by sending Mr. Davis a letter. *See* Defs.' Exhibit B (ECF No. 223-1) at 9–11. The March 26, 2001 letter communicated to Mr. Davis that Liberty Mutual would pay for both the prescriptions from CVS and the glucosamine and chondroitin, but would reject payment for the exercise bike, the treadmill, and the fitness equipment. *Id.* In addition to the March 26, 2001 letter, Liberty Mutual offered as evidence at the evidentiary hearing a payment ledger purporting to show the checks issued to Mr. Davis for the requests which were approved. *See* Defs.' Exhibit C (ECF No. 223-1) at 13–24.

### A. Approved Requests

Upon review of the March 26, 2001 response letter, the undersigned finds that Liberty Mutual failed to fully comply with Paragraph 4(A) of the 2001 Order with regard to the approved request for reimbursement for CVS prescriptions, and the request for reimbursement for glucosamine and chondroitin. More specifically, the undersigned observes that Liberty Mutual's March 26, 2001 letter fails to separately list each medication for which Mr. Davis sought reimbursement. With regard to the list of prescriptions from CVS, the letter simply states that "Liberty Mutual will reimburse you for the amount on the CVS summary, in the amount of $ 2420.44, subject to the questions raised below." Defs.' Exhibit B (ECF No. 223-1) at 9. Liberty Mutual does not "separately list" each medication, nor does it identify the amount requested by Mr. Davis.

Likewise, Liberty Mutual's response to Mr. Davis's request for reimbursement for glucosamine and chondroitin is also lacking. It reads in total: "Liberty Mutual will reimburse you for the chondroitin in the total amount of $ 119.94, $ 39.98 x 3, subject to the inquiry set forth below." *Id.* The 2001 Order, however, requires that in the event that Mr. Davis has requested reimbursement for "two or more of the same medications," Liberty Mutual shall "identify each by date, or other distinguishing feature, and separately respond to each." 2001 Order at 1. Liberty Mutual failed to do so.

### B. Denied Requests

Liberty Mutual argues that the three remaining requests made by Mr. Davis in the March 14, 2001 letter are not subject to the 2001 Order because Mr. Davis was not, in fact, requesting reimbursement, but rather "prospectively requesting replacement of the identified exercise equipment[.]" Defendants George Hyman Construction and Liberty Mutual's Chart Regarding

Liberty Mutual's Responses to Plaintiff's Reimbursement Requests Pursuant to Court's Order Dated February 15, 2017 ("Defendants' Chart") (ECF No. 277) at 4 n.5.  Liberty Mutual further contends that only reimbursements for Mr. Davis's out-of-pocket expenses are subject to the terms of the 2001 Order.  Legal and Equitable Defenses Mem. at 28.  The undersigned cannot concur in this all-encompassing interpretation of the 1982 and 2001 Orders.

The text of the 1982 Order states that the purpose of the Court's intervention is to "secure payment of medical expenses, transportation expenses, reimbursement of prescription costs, and orthopedic footwear[.]"  August 24, 1982 Order (ECF No. 117-1) at 1.[11]  While the Court, in the 1982 Order, appears to use the terms "expenses" and "reimbursements" interchangeably, it is clear that *some* instances of prospective reimbursement requests were envisioned by the Court.  The 1982 Order states "the expense of filling the prescriptions will be separately itemized from the druggist when *advanced reimbursement prior to the purchase* of the medication is being sought." *Id.* (emphasis supplied).  The 1982 Order, therefore, does not require that Liberty Mutual only reimburse Mr. Davis for purchases that he had already personally made, but contemplates prospective payment in the event that Mr. Davis submits a "separately itemized" bill or invoice from a supplier.

Similarly, the language of the 2001 Order itself envisions payment to Mr. Davis for instances other than direct reimbursement for out-of-pocket expenses.  Paragraph 6 of the 2001 Order states that "[f]or every day beyond the 30 days specified in this order . . . that Liberty Mutual fails to pay in full or file an adequate response to a request for reimbursement *or payment*, Liberty Mutual will be liable for a $500 fine, payable to the Plaintiff, Earl C. Davis, until payment in full or an adequate response is made."  2001 Order at 2 (emphasis supplied).

---

[11] The ECF entry for docket number 117-1 contains a copy of the 1982 Order, which does not otherwise appear on the active docket.  The original 1982 Order can be reviewed on microfische with assistance from the Clerk of Court.

Liberty Mutual also argues that the three requests at issue do not fall within the ambit of the 2001 Order's response requirements because each is not a "medication, therapy, procedure, or medical condition[.]" *See* Legal and Equitable Defenses Mem. at 29–30. The undersigned rejects this argument. It should be noted that during the hearing that led to the filing of the 2001 Order, the parties discussed the proposed language at length. *See generally* Transcript of Motions Hearing (ECF No. 54). During that hearing, James Greene, Esquire, then counsel for Liberty Mutual, stated that, in his view, requests for payment for items such as exercise equipment would be subject to the provisions of the proposed order. *Id.* at 13 ("And then if [Mr. Davis] puts in *bills* for things like exercise equipment, that should be treated as a separate item, as well. If we fail to respond to that within 30 days, that would be an infraction.") (emphasis supplied). Indeed—in virtual anticipation of the issues presented with respect to Mr. Davis's March 14, 2001 claim—Mr. Greene continued:

> [S]uppose Liberty [Mutual] paid the request for reimbursement on the drugs, all the drug store prescriptions, but failed to respond by either rejecting or agreeing to pay for the *replacement of the exercise equipment*. It would be logical to state, for the Plaintiff to make an argument that the failure to respond on that portion of this reimbursement request is an infraction. I believe we'd be hard pressed to argue with that.

Transcript of Motions Hearing (ECF No. 54) at 14–15 (emphasis supplied).

Largely for these reasons, the undersigned finds that all parties were in agreement that a request for exercise equipment, accompanied by a bill or invoice, would be covered by the 2001 Order. The question remains, however, whether Mr. Davis's request for payment for the replacement of exercise equipment was made in accordance with the terms of the 1982 Order. The record is clear that Mr. Davis submitted several "print-outs" from internet advertisements or catalogs to support his claim for payment. *See* Defs.' Exhibit A (ECF No. 223-1) at 5–7. Liberty Mutual refused payment for these items, in part, because Mr. Davis "submitted pages from an

internet catalog, not firm estimates" and because Mr. Davis did not "obtain[] a repair estimate on each of these three pieces of equipment[.]"  Defs.' Exhibit B (ECF No. 223-1) at 10–11.

Upon review of the language of the 1982 Order, the undersigned finds that Mr. Davis did not submit his requests for replacement of three pieces of exercise equipment in accordance with the terms of the 1982 Order.  Mr. Davis did not submit "an itemization of the expenses for which he is seeking reimbursement[,]" nor did he submit any bill or invoice from a supplier.  *See* 1982 Order at 1.  Liberty Mutual responded to Mr. Davis within thirty days of his request, and advised that "[i]f any one or more of these pieces of equipment are to be replaced, Liberty Mutual will reserve the right to seek its own source and a more favorable price."  Defs.' Exhibit B (ECF No. 223-1) at 11.  Mr. Kijovsky also testified that "when someone needs any type of durable medical equipment, which is the term we would use, I would rather the[m] go out and buy and pay for it and reimburse them[,]" or "have a vendor bring it into the home, provide it for them, so we don't have to pay money on cost.  We get billed directly at a much lower rate."  Transcript of Evidentiary Hearing (ECF No. 271) at 70.

The undersigned underscores that the current proceeding is strictly limited to a determination of whether or not Liberty Mutual complied with the provisions of the 1982 Order, as modified by the 2001 Order.  The propriety of Liberty Mutual's determination regarding the amount of any reimbursement to Mr. Davis for replacement of exercise equipment is beyond the scope of this Court's jurisdiction, and has already been adjudicated through the administrative process.  As neither the 1982 Order, nor the 2001 Order, contemplate submissions of advertisements by Mr. Davis, the undersigned finds that the final three items in the March 14, 2001 request are not subject to the fine provision.

### C. Determination Regarding a Fine

The undersigned finds that Liberty Mutual did not comply with the requirements of Paragraph 4(A) of the 2001 Order, which required that Liberty Mutual, in its response, "identify each [medication] by date, or other distinguishing feature, and separately respond to each." 2001 Order at 1. However, the evidence presented indicated that Liberty Mutual did "pay in full" the two requests made by Mr. Davis for prescriptions from CVS and for glucosamine and chondroitin. Mr. Kijovsky testified that a check in the amount of $2,760.38 was issued to Mr. Davis on April 4, 2001 as payment for both requests and an additional $220 for shoe repairs. *See* Transcript of Evidentiary Hearing (ECF No. 271) at 40–41; Defs.' Exhibit C (ECF No. 223-1) at 19. Accordingly, the undersigned finds that the fine calculated pursuant to Paragraph 6 does not apply to the two approved requests contained in the March 14, 2001 request letter since payment in full was made within the thirty-day time period for which the Order provided.

### II.     *April 3, 2001 Request*

On April 3, 2001, Mr. Davis submitted a letter to Liberty Mutual in which he requested payment related to five items: (1) reimbursement for prescriptions from CVS pharmacy; (2) payment for orthopedic shoes; (3) an invoice from Dr. Randolph Frank; (4) an invoice from Dr. Jerry Snow; and (5) an invoice from Sibley Hospital. Defs.' Exhibit D (ECF No. 223-1) at 27–39.

Mr. Kijovsky testified that Liberty Mutual provided a response to this request on April 20, 2001 by sending Mr. Davis a letter. *See* Defs.' Exhibit E (ECF No. 223-1) at 41–44. The April 20, 2001 letter communicated to Mr. Davis that Liberty Mutual would pay for the prescriptions from CVS, but would reject payment for the orthopedic shoes. *Id.* at 41–42. Additionally, Liberty Mutual stated that it would pay Dr. Frank "for the reasonable and customary value of his services"; rejected payment for Dr. Snow, and "cannot determine whether it will or will not pay" the Sibley

Hospital bill. *Id.* at 42–43. In addition to the April 20, 2001 response letter, Liberty Mutual offered a payment ledger purporting to show one check issued to Mr. Davis related to the requests made on April 3, 2001, as well as two checks paid directly to Dr. Frank. *See* Defs.' Exhibit C (ECF No. 223-1) at 19–20.

## A. Approved Requests

Upon review of the April 20, 2001 response letter, the undersigned finds that Liberty Mutual failed to fully comply with the 2001 Order with regard to the approved request for reimbursement for CVS prescriptions.

As with the March 26, 2001 response letter, the April 20, 2001 response letter fails to separately list each medication for which Mr. Davis sought reimbursement. With regard to the list of prescriptions from CVS, the response letter simply states "Liberty Mutual will reimburse you in the full amount for each item on the CVS summary, in the amount of $ 749.61." Defs.' Exhibit E (ECF No. 223-1) at 41. Likewise, the April 20, 2001 letter fails to "identify each [medication] by date, or other distinguishing feature, and separately respond to each." 2001 Order at 1.

## B. Denied Requests

The undersigned finds that Liberty Mutual fully complied with the requirements of Paragraph 4(B) of the 2001 Order as to the request for payment for orthopedic shoes.

With regard to this specific request, an April 24, 2001 response letter separately listed the request by Mr. Davis for reimbursement for expenses at "F.R. Richey Shoe," followed by the amount requested by Mr. Davis, and "an unequivocal assertion that the payment is refused[.]" Defs.' Exhibit H (ECF No. 223-1) at 53. In support of its decision to refuse payment at that time, Liberty Mutual stated that Mr. Davis provided no "prescription, letter from a doctor or other supporting evidence as to the reason why you seek to buy four new pairs of shoes at the same

time." *Id.* In the same letter, "Liberty Mutual hereby offers to honor a bill for two pairs of shoes, and the necessary orthotics or other modification which you require. If you indicate which two pairs you select, and submit an estimate including modifications, Liberty Mutual will pay Richey directly, if you wish." *Id.*

The undersigned notes that following the initial denial and request for additional information, the parties held an informal conference on May 10, 2001. *See* Post-Hearing Submission of Defendant Liberty Mutual Insurance Company ("Post-Hearing Submission") (ECF No. 96) at 8.[12] Following the discussion between the parties at the informal conference, Liberty Mutual reconsidered its earlier denial and approved payment for the orthopedic shoes. *Id.* At the evidentiary hearing, Mr. Kijovsky testified that Liberty Mutual issued a check to Mr. Davis in the amount of $9,236.50 on June 11, 2001 for the payment of the orthopedic shoes, in addition to other requests. *See* Transcript of Evidentiary Hearing (ECF No. 271) at 75–76.

### C.  Remaining Requests

The undersigned concludes that three remaining requests included in the April 3, 2001 request do not fall within the purview of the 2001 Order. With respect to payments to providers of medical care, Liberty Mutual argues that the Order only pertains to payments made directly to Mr. Davis, rather than to providers of medical care. *See* Legal and Equitable Defenses Mem. at 28. Mr. Davis objects to this characterization, and points to statements made by Mr. Greene on the record of the March 14, 2001 motion hearing as support. *See* Memorandum in re Oral Argument (ECF No. 281) at 10–11.

---

[12] The undersigned recognizes that this document was not entered into evidence at the most recent evidentiary hearing, but was submitted following the first evidentiary hearing held by the undersigned in 2003. In order to arrive at an accurate and equitable resolution of this matter, however, the undersigned has undertaken a more fulsome review of the voluminous record.

While the undersigned does view Mr. Greene's statements as evidence that the parties did envision the 2001 Order encompassing itemized bills for items such as exercise equipment, the same cannot be said of payments to providers of medical care.  In referencing the proposed language which would become the 2001 Order, Mr. Greene stated that each request by Mr. Davis for payments to his healthcare providers is "really a separate matter."  Transcript of Motions Hearing (ECF No. 54) at 11.  He went on to note that "reimbursement requests from Mr. Davis come ordinarily, every 60 days," while the bills from healthcare providers are sent "from the service provider directly to the [Liberty Mutual] claim representative in Houston."  *Id.* at 11, 12. In contrast to the undersigned's findings regarding exercise equipment, it cannot be said that all parties were in agreement that the 2001 Order would require Mr. Davis to submit claims for payment of invoices from his healthcare providers, or that any such claims would be subject to the 2001 Order, which provides as a remedy "a $500 fine, *payable to the Plaintiff, Earl C. Davis*, until payment in full or an adequate response is made."  2001 Order at 2 (emphasis supplied).

Additionally, Liberty Mutual notes that the United States Department of Labor (then a party to this action), agreed that requests for payment to other service providers "fall outside the scope of the March 15, 2001 court order" because the 2001 Order "addresses reimbursement to Mr. Davis and not payment to the medical provider."  Legal and Equitable Defenses Mem. at 28 (quoting Status Report of Court Ordered In Person Meeting between Counsel for the Director, United States Department of Labor, Counsel for Liberty Mutual, and Plaintiff Earl Davis (ECF No. 121) at 2).  While Mr. Davis did not agree to this interpretation of the Order, the undersigned attributes significant weight to the Department of Labor's interpretation.

Finally, the undersigned notes that the LHWCA (the statute giving rise to this Court's jurisdiction), envisions compensation as "the money allowance payable to an *employee or to his*

*dependents* as provided for in this chapter," and not additional funds requested by the employee payable to his other service providers. *See* 33 U.S.C. § 902(12). This interpretation is further buttressed by the language of the 1982 Order, which held that following submission of claims by Mr. Davis, Liberty Mutual "will pay part or all of the expenses directly to Mr. Davis with a full explanation and itemization of what the payments represent[.]" 1982 Order at 1–2. The 1982 Order does not contain any provision for the submission of bills from service providers, nor the obligations pertaining to Liberty Mutual's responses thereto.

Accordingly, the undersigned finds that the three requests made by Mr. Davis in the April 3, 2001 request letter for payment to Dr. Frank, Dr. Snow and Sibley Hospital, are not covered by the 1982 Order, as modified by the 2001 Order. Thus, no fine will be imposed relating to those three requests.

### D.  Determination Regarding a Fine

Paragraph 6 of the 2001 Order sets forth the formula for the imposition of a fine relating to Liberty Mutual's noncompliance. It reads in total:

> For every day beyond the 30 days specified in this order, as calculated under F. R. Civ. P. 6, that Liberty Mutual fails to pay in full or file an adequate response to a request for reimbursement or payment, Liberty Mutual will be liable for a $500 fine, payable to the Plaintiff, Earl C. Davis, until payment in full or an adequate response is made.

2001 Order at 2.

The April 3, 2001 letter submitted to Liberty Mutual by Mr. Davis contained five distinct requests: one of which was paid within the allowable thirty-day period; one of which was purportedly denied, only to be paid on June 11, 2001; and three of which are not subject to the 2001 Order's fine provision. While it is clear that Liberty Mutual did not comply with the requirements in Paragraph 4(A) of the 2001 Order, testimony was provided that demonstrates that

Liberty Mutual did pay in full the request for reimbursement of CVS prescriptions.  *See* Transcript of Evidentiary Hearing (ECF No. 271) at 133–34.[13]  Accordingly, since Liberty Mutual fulfilled the requirement in Paragraph 6 that they "pay in full or make an adequate response" within the allowable thirty days, no fine will be imposed for the one request that was approved in the April 20, 2001 response letter.

With respect to Mr. Davis's request for reimbursement for orthopedic shoes, the undersigned determined that Liberty Mutual's initial denial, on April 20, 2001, was in accordance with the provisions of the 2001 Order.  Upon reconsideration, on May 10, 2001, Liberty Mutual approved payment; however, counsel for Liberty Mutual acknowledged that "[a]t most, there was a one day delay from June 10 (thirty days after the Informal Conference) to June 11, when the check was issued[]."  Post-Hearing Submission (ECF No. 96) at 8; *see also* Transcript of Evidentiary Hearing (ECF No. 271) at 75–76.[14]  Thus, in accordance with the instruction of the Circuit, the undersigned will impose the fine prescribed by the 2001 Order, a total of $500.

---

[13]      Q. Did you perform any further investigation to confirm that payment to Mr. Davis?
          A. I did.
          Q. And what did that result in?
          A. I have located the payment screens that we discussed earlier.  I found one for April 23, 2001, to Mr. Davis for $749.61.  The check note read "Drug reimbursement.

Transcript of Evidentiary Hearing (ECF No. 271) at 134.

[14]      Q. And what did reviewing the pay screens reveal to you?
          A. It confirmed a June 11 check and it noted in the check memo field that there were other things on it as well – noted reimbursement for ortho shoes, repairs, and exercise equipment.
          Q. And what was the amount of that check again?
          A. $9,236.50.

Transcript of Evidentiary Hearing (ECF No. 271) at 75–76.

### III.      November 26, 2001 Request

On November 26, 2001, Mr. Davis submitted a request letter for seven items or services: (1) reimbursement for prescriptions from CVS pharmacy; (2) reimbursement for the purchase of glucosamine and chondroitin; (3) reimbursement for mileage; (4) reimbursement for parking; (5) payment for a wheelchair; (6) payment for a power chair lift, and (7) payment for the chair lift installation.  Defs.' Exhibit M (ECF No. 223-2) at 36–37.[15]

Mr. Kijovsky testified that Liberty Mutual provided a response to this request on December 21, 2001 by sending Mr. Davis a letter.  *See* Defs.' Exhibit N (ECF No. 223-2) at 52–55.  The December 21, 2001 response letter communicated to Mr. Davis that Liberty Mutual would pay for the prescriptions from CVS, the glucosamine and chondroitin, the mileage and the parking, but would reject payment for the wheelchair, chair lift, and lift installation.  *Id.* at 52–54.  In addition to the December 21, 2001 response letter, Liberty Mutual offered a payment ledger purporting to show three checks issued to Mr. Davis related to the requests made on November 26, 2001.  *See* Defs.' Exhibit C (ECF No. 223-1) at 19.

#### A.  Approved Requests

Upon review of the December 21, 2001 letter, the undersigned finds that Liberty Mutual failed to fully comply Paragraph 4(A) with the 2001 Order with regard to the approved requests for reimbursement for CVS prescriptions, as well as glucosamine and chondroitin. The December

---

[15] The November 26, 2001 letter from Mr. Davis also requested additional funds relating to his request for exercise equipment that was paid by Liberty Mutual on June 11, 2001.  The undersigned does not view this entry as a separate reimbursement request covered by the 2001 Order.  The text of the November 26, 2001 letter notes a difference in price between the advertised price and the "price actual cost" and asks Liberty Mutual to "indicate your intention about the difference to the District Director."  Defs.' Exhibit M (ECF No. 223-2) at 37.  Paragraph 5 of the 2001 Order requires Liberty Mutual to serve all responses on the District Director so that, in the event of a disagreement regarding compensation, "the district director shall attempt to resolve the dispute[.]"  2001 Order at 2.  Neither the 1982 Order nor the 2001 Order provide for Mr. Davis to make a claim, receive a denial (or payment), and then submit a second request for additional funds.  The process, rather, requires that the District Director attempt to resolve such disputes.

21, 2001 letter failed to "identify each [medication] by date, or other distinguishing feature, and separately respond to each."  2001 Order at 1.  With regard to both requests, the response did separately list the medications claimed by Mr. Davis, but it did not identify each by date, prescription number, or any other distinguishing characteristic.

The December 21, 2001 letter did, however, provide an adequate response to Mr. Davis's request for reimbursement for mileage and parking.  Liberty Mutual's response approved payment for both requests and contained a calculation of the reimbursement for mileage based on 34.5 cents per mile, and approval for the entire amount sought for parking.  *See* Defs.' Exhibit N (ECF No. 223-2) at 54.

### B.  Denied Requests

The December 21, 2001 letter also complied with Paragraph 4(B) of the 2001 Order with regard to the request for payment for the wheelchair, power chair lift, and lift installation.[16]  The letter separately listed Mr. Davis's request for each item, included the $8,164.00 amount requested by Mr. Davis, asserted a denial, and provided a legally sufficient reason for that denial, *i.e.*, that Mr. Davis's request "include[d] no report from any doctor nor any prescription stating that such equipment is necessary, or supporting such a statement with a report concerning your condition and relating any need for such equipmen[t] to your workplace accident of August 11, 1965."  Defs.' Exhibit N (ECF No. 223-2) at 54.

---

[16] These requests were similar to the requests for exercise equipment found in the March 14, 2001 request letter, which the undersigned has determined were not covered by the language of the 1982 or 2001 Orders.  Significantly, however, the requests contained in the November 26, 2001 letter were accompanied by an itemized invoice from the provider, Advanced Mobility Inc.  *See* Defs.' Exhibit M (ECF No. 223-2) at 46.  The undersigned finds that the requests concerning the wheelchair, power chair lift, and lift installation were within the ambit of the 1982 Order, as Mr. Davis sought prospective reimbursement for an itemized list of expenses.  Accordingly, these requests are akin to the request for prospective reimbursement for medications and, therefore, were properly submitted to Liberty Mutual for a determination of payment or rejection.

## C. Determination Regarding a Fine

The November 26, 2001 request letter contained seven distinct requests: two of which were paid within the allowable thirty-day period; one of which was paid in full on January 23, 2002; one of which was paid in full on January 24, 2002; and three of which were denied in the manner prescribed by the 2001 Order.

It is clear that Liberty Mutual did not comply with the requirements in Paragraph 4(A) of the 2001 Order with regard to the two requests for medication reimbursement. Further, testimony was provided that demonstrates that Liberty Mutual did pay in full the request for reimbursement by Mr. Davis, *see* Transcript of Evidentiary Hearing (ECF No. 274) at 24–25.[17] The record reflects, however, that payment was not made in full for the glucosamine and chondroitin until January 23, 2002, which is outside the allowable thirty days mandated by the 2001 Order.[18]

Accordingly, since Liberty Mutual neither paid in full, nor made an adequate response within the allowable thirty days, the undersigned will impose a fine of $500 per day, beginning on December 27, 2001 (thirty-one days after Mr. Davis submitted his request on November 26, 2001), and ending on January 23, 2002 (the date that payment was made) for the request for glucosamine and chondroitin, and ending on January 24, 2002 (the date that payment was made) for the request for CVS prescriptions. This amounts to a total fine of $27,500.[19]

---

[17]       Q. On What date was Mr. Davis paid the prescriptions from CVS in the amount of $6,644.75?
          A. He was paid $5,819.95 on January 23rd on 2002. He was paid an additional $1,000 on January 24th of 2002.

Transcript of Evidentiary Hearing (ECF No. 274) at 25.

[18] The record further reflects that the full amount for the CVS prescriptions was not paid until January 24, 2002.

[19] The fine is calculated based on one payment being made 27 days after the deadline imposed by the 2001 Order, and a second payment being made 28 days after the deadline imposed by the 2001 Order. (27 days x 1 request x $500 = $13,500; 28 days x 1 request x $500 = $14,000).

#### IV.    *"Legal and Equitable Defenses" Offered by Defendants*

Liberty Mutual not only relied upon its contention that it complied with the provisions of the 2001 Order as to the claims at issue, but also offered five "legal and equitable" reasons why no fine should be imposed for any violation of the provisions of that Order. The 2001 Order provides, at Paragraph 7:

> This Order does not affect any rights Liberty Mutual may have to present a legal, factual or equitable defense to any proceeding under [the fine provisions of Paragraph 6] of this Order.

2001 Order at 2.

The record with respect to the proceedings before the undersigned in 2001 reflects that Liberty Mutual proposed the addition of the language of Paragraph 7. As the basis of its concern, counsel for Liberty Mutual argues that such language was required because it did not want to be "unable to present evidence that a bill was not responded to because [Liberty Mutual] never received it." Transcript of Motions Hearing (ECF No. 54) at 22. By way of illustration, counsel for Liberty Mutual offered a hypothetical in which Mr. Davis sent a request for reimbursement to a Liberty Mutual office, but "it had no claim number or other identifying case information in it[,]" and that, as a result, Liberty Mutual's response was delayed. *Id.* at 22–23.

None of the legal and equitable defenses now offered by Liberty Mutual resemble this hypothetical concern that Liberty Mutual posited at the time Paragraph 7 was added to the 2001 Order. Rather, Liberty Mutual objects to the nature of the 2001 Order in its entirety. As the undersigned has reiterated on countless occasions during the proceedings following the 2014 remand, however, the time for reconsideration of the 2001 Order has long since passed. Nonetheless, the undersigned will discuss in turn each of the defenses offered.

**A.  March 14, 2001 Request Was Not Covered**

Liberty Mutual contends that all the payments included in the March 14, 2001 submission by Mr. Davis are "not covered" by the 2001 Order because the request was submitted to Liberty Mutual one day before the undersigned signed the 2001 Order on March 15, 2001.  *See* Transcript of Evidentiary Hearing (ECF No. 271) at 14–17; *see also* Defendants George Hyman Construction and Liberty Mutual's Chart Regarding Liberty Mutual's Responses to Plaintiff's Reimbursement Requests Pursuant to Court's Order Dated February 15, 2017 (ECF No. 277) at 3 n.1 (Liberty Mutual maintains the Court's March 15, 2001 Order is not applicable to Plaintiff's March 14, 2001 letter . . . which was hand delivered . . . before the Court's March 15, 2001 Order . . . was entered[.]").

The undersigned rejects this argument, however, as the March 26, 2001 response letter from Liberty Mutual to Mr. Davis made clear that Liberty Mutual understood the 2001 Order to be in effect and binding upon it at the time it responded to Mr. Davis in writing.  *See* Defs.' Exhibit B, (ECF No. 223-1) at 9 ("This letter is directed to you, pursuant to the August 28, 1982 Order, *as amended*, with respect to the items listed on your Reimbursement Request dated March 14, 2001[.]") (emphasis supplied).  While the request from Mr. Davis may have been submitted prior to the filing of the 2001 Order, Liberty Mutual's responses to that request were subject to the 2001 Order and its provisions.

While the undersigned cannot concur in this argument, it is moot with regard to the issue at hand because the undersigned has concluded that no fine will be levied for non-compliance with the March 14, 2001 request and Liberty Mutual's response thereto.

**B.  Condition Precedent Was Not Met**

Liberty Mutual also contends that no fine can be imposed against it because Mr. Davis did not comply with the provisions of the 1982 Order, which required him to, *inter alia*, submit his reimbursement and payment requests "by certified mail[.]"  *See* Legal and Equitable Defenses Mem. at 13, 23–25.  Additionally, Liberty Mutual asserts that Mr. Davis did not submit some of his claims "within 60 days."  *Id.* at 23.  Thus, Liberty Mutual argues, Mr. Davis failed to satisfy a "condition precedent" for the applicability of the 2001 Order's fine provision.  *Id.* at 24.

Initially, the undersigned notes that Liberty Mutual has made this identical argument in the past, to no avail.  *See* Motion for Reconsideration of Magistrate's 1/10/07 Oral Ruling of Sanctions (ECF No. 124) at 3–4 ("Since claimant has failed to obey the Order to submit reimbursement requests every 60 days, he comes before this Court with unclean hands and should not be allowed to penalize the employer for being 11 days late in reimbursing his expenses in 2002.").  The then-assigned District Judge (Kennedy, J.) did not agree, and did not reverse the imposition of the fine prescribed by the 2001 Order.  *See* Order (ECF No. 138).

Second, the undersigned notes that both the 1982 Order and the 2001 Order were entered in large part because Liberty Mutual had failed to make timely responses to the requests submitted by Mr. Davis.  *See* 1982 Order at 1 ("Upon consideration of the representation of Plaintiff, by and through his counsel, concerning the *need for further Order of this Court to secure payment of medical expenses*…"); *see also* Transcript of Motions Hearing (ECF No. 54) at 2–3 ("I have reviewed the relevant materials from the case file, including the order entered by Judge Pratt in 1982.  Having done so, it appears that Liberty Mutual largely concedes that is has not complied with the terms of that order. . . .  [T]he request is largely the same, this is that some *action be taken*

*by the Court to ensure that Liberty Mutual comply* with the terms of the August 24th, 1982 order.") (emphasis supplied).

Third, it is clear from the record that the *exact* process outlined in the 1982 Order was no longer feasible as it required payments to be "reimbursed to Plaintiff's attorney, Richard W. Galiher, Jr., by separate check." 1982 Order at 1. The 1982 Order also required Mr. Davis to submit his claims "in writing *to his attorney*" which would then be mailed to Liberty Mutual. *Id.* (emphasis supplied). A cursory review of the docket shows that Mr. Galiher withdrew as appointed counsel on May 20, 1983. *See* 11/01/1999 Docket Entry (ECF No. 243) at 4. Were the undersigned to accept Liberty Mutual's argument, none of the requests submitted by Mr. Davis would ever have been appropriate following the withdrawal of his appointed counsel in 1983. Such an interpretation of the 1982 Order would render both it and the 2001 Order effectively meaningless.

Finally, the undersigned observes that Liberty Mutual submitted its responses to Mr. Davis "pursuant to the August 28, 1982 Order, as amended," and yet never questioned the timeliness of his submissions. *See, e.g.*, Defs.' Exhibit B (ECF No. 223-1) at 9. Liberty Mutual was required to provide certain information to Mr. Davis in order to comply with the terms of the 1982 and 2001 Orders, *see* 2001 Order at 1, and yet Liberty Mutual's responses did not include any mention of the timeliness of Mr. Davis's requests.

Therefore, the undersigned rejects Liberty Mutual's argument regarding Mr. Davis's alleged failure to satisfy a condition precedent.

## C.  Timely Payment is Not Required

On the record at the evidentiary hearing, as well as in writing, Liberty Mutual argued that a fine could not be imposed for late payment because the 2001 Order identified two alternative

means of avoiding the fine provision, *i.e.*, paying in full within thirty days *or* providing an adequate

response. *See* Transcript of Evidentiary Hearing (ECF No. 274) at 90–92.[20] More specifically,

Liberty Mutual asserts, as long as it *promised* to pay Mr. Davis for his requested expenses, there

is no requirement that it *actually* pay those expenses in a timely manner.[21] No authority supports

this proposition, and indeed, none is offered.

The undersigned finds such an interpretation of the 2001 Order's fine provision to be

implausible. As noted above, counsel for Liberty Mutual recognized that "[a]t most, there was a

one day delay" in payment to Mr. Davis for the orthopedic shoes requested in his April 3, 2001

letter. *See* Post-Hearing Submission (ECF No. 96) at 8. Additionally, Liberty Mutual, in moving

to reconsider the $5,500 fine issued by the undersigned in 2007, acknowledged that it had paid Mr.

Davis "11 days after the 30 day requirement, which was 41 days after his initial request." Motion

for Reconsideration of Magistrate's 1/10/07 Oral Ruling of Sanctions (ECF No. 124) at 2. Liberty

Mutual did not raise the instant defense at that time, and indeed recognized that the 2001 Order

contemplated payment in full for approved requests within thirty days.

This defense does not apply to the fine imposed related to the November 26, 2001 request

for medications. Both requests were purportedly approved, but Liberty Mutual failed to separately

list and separately respond, as required in Paragraph 4(A) of the 2001 Order. Accordingly, the

---

[20]      Mr. Boyd: That's correct, Your Honor. And again, Paragraph 6 of the 2001 order assesses the fine if
          Liberty Mutual either fails to pay or fails to file an adequate response. So it could do one of two things to
          avoid the fine under Paragraph 6. . . .
          The Court: Would that not mean that Liberty Mutual could file an adequate response and indicate that it will
          pay and delay paying for years?
          Mr. Boyd: That's correct, your honor.
          The Court: And there would be no sanction?
          Mr. Boyd: Pursuant to the terms of the 2001 order, that's correct[.]

Transcript of Evidentiary Hearing (ECF No. 274) at 91.

[21] Notably, counsel for Liberty Mutual did not even suggest that payment must be made within a reasonable time, in
accordance with standard business practices, or in any other period consistent with business practices.

response from Liberty Mutual was not adequate, and the fine was imposed for the twenty-seven and twenty-eight days past the allowable period for the two respective requests for medications.

### D.  Tolling Fine Imposition Period

Additionally, Liberty Mutual argues that any calculation of the fine should toll the period "when the Court deferred ruling, the subsequent time when the controlling Order and Opinion held that Liberty Mutual complied with the Orders, and then during the next time period in which this matter has been on remand."  Legal and Equitable Defenses Mem. at 37–38.  The undersigned has no occasion to further address this concern, however, since the calculation of the daily fine outlined above does not include any of the identified periods.

### E.  The Orders Were Ambiguous

Finally, Liberty Mutual asserts that no fine may be imposed because this Court has previously held that it complied with the 1982 and 2001 Orders.  *See* Legal and Equitable Defenses Mem. at 11 n.9.  Were the undersigned to come to a different conclusion now, Liberty Mutual argues, "then the provisions or Orders are necessarily unclear and ambiguous under the controlling case law."  *Id.* at 12 (citing *Doe v. Gen. Hosp. of D.C.*, 434 F.2d 423, 424–25 (D.C. Cir. 1970)).

The undersigned rejects this interpretation of the procedural history of this case.  The record reflects that the undersigned imposed a fine for late payment by Liberty Mutual regarding the March 7, 2002 request letter.  Subsequently the Court held that "the Magistrate Judge was satisfied that the other reimbursement requests either were in compliance with the Modified Order or were not covered by the 1982 Order[.]"  Memorandum Opinion (ECF No. 204) at 9.  Mr. Davis appealed that decision to the Circuit, which disagreed with the District Court and found that "the record does not reflect that the magistrate judge ever expressly considered and decided whether Liberty Mutual was liable for a fine with respect to the requests dated March 14, April 3, and November

26, 2001[.]" Judgment (ECF No. 213) at 2. In order to fully comply with the Judgment of the Circuit, the undersigned, on remand, scheduled a new evidentiary hearing in order to make more fulsome findings.[22]

The undersigned also rejects the proposition that the imposition of a fine for late payment of the April 3 and November 26, 2001 requests amounts to a finding that the 1982 and 2001 Orders are ambiguous. In support of its argument, Liberty Mutual points specifically to language in the Memorandum Opinion of the assigned District Judge that the 1982 and 2001 Orders "applies only to reimbursements to Mr. Davis personally, and does not address any other payments for medical services (such as the disputed direct payments to Mr. Davis' doctor and treating hospital)." Legal and Equitable Defenses Mem. at 40 (quoting Memorandum Opinion (ECF No. 204) at 8). If this is the ambiguity to which Liberty Mutual refers, this argument is also moot: the undersigned expressly held in the instant Memorandum Opinion that the 1982 and 2001 Orders do not apply to requests by Mr. Davis that Liberty Mutual pay additional funds directly to his providers.

**CONCLUSION**

For all the foregoing reasons, the undersigned finds that Liberty Mutual has failed to comply with the provisions of the 2001 Order. As to the April 3, 2001 request, Liberty Mutual failed to comply for a period of one day, resulting in a fine of $500. As to the November 26, 2001 request, Liberty Mutual failed to comply for a period of twenty-seven and twenty-eight days, respectively, resulting in a fine of $27,500. Accordingly, the undersigned finds Liberty Mutual is required to pay to Mr. Davis $28,000.00 as calculated according to Paragraph 6 of the 2001 Order.

An Order providing for said fine is filed contemporaneously.

---

[22] *See also supra* note 9 and accompanying text.

_____
DEBORAH A. ROBINSON
June 16, 2017                                United States Magistrate Judge